**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD ETHERIDGE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-7204 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| HUDSON GROUP (HG) Retail, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Plaintiff Richard Etheridge, a white man in his 60s, worked as a delivery driver for Defendant Hudson Group for less than a year. It was a bumpy ride. At one point, a co-worker physically attacked him. And later, he inhaled paint fumes at O'Hare airport. The attack and the fumes caused him to miss work. And then, he applied for a new position within the company, but Hudson Group gave it to a younger, non-white woman instead.

After Etheridge missed a few days of work, Hudson fired him. But Etheridge believes that he was fired because of his disabilities, race, sex, and age. He also believes that Hudson retaliated against him for complaining about discrimination. He sued Hudson and alleged eight counts of discrimination. Hudson moved to dismiss all eight counts.

For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## Background

At the motion-to-dismiss stage, the Court must accept as true the well-pleaded allegations of the complaint. *See Lett v. City of Chicago*, 946 F.3d 398, 399 (7th Cir. 2020). The Court "offer[s] no opinion on the ultimate merits because further development of the record may cast

the facts in a light different from the complaint." *Savory v. Cannon*, 947 F.3d 409, 412 (7th Cir. 2020).

In October 2018, Defendant Hudson Group[1] hired Plaintiff Richard Etheridge as a delivery driver. *See* Am. Cplt., at ¶ 12 of Count I (Dckt. No. 31).[2] Etheridge is a white male. *Id.* at ¶ 10 of Count III, ¶ 10 of Count IV. He was the only non-black delivery driver at Hudson's office in Elk Grove Village. *Id.* at ¶ 12 of Count III.

Sometime in February 2019, Etheridge complained about drug use by other drivers. *Id.* at ¶ 14 of Count III. He complained to his managers, who had the first names of Gerald and Roosevelt. (Etheridge does not recall their last names, but that's not problematic here.) *Id.* He was apparently upset that certain black delivery drivers were taking drugs in their work vehicles. *Id.*

On February 19, a co-worker physically attacked Etheridge during work. *Id.* at ¶ 13 of Count I. The complaint does not give a reason why the attack took place. But the inference seems to be that Etheridge was attacked for calling attention to the drug use by other drivers. Etheridge complained about "certain black delivery drivers, including, Derrick, taking drugs in their work vehicles." *Id.* at ¶ 14 of Count III. And Derrick is the one who attacked him. *Id.* at ¶ 15 of Count III.

---

[1] Plaintiff sued "Hudson Group a/k/a Hudson News Group." *See* Cplt. (Dckt. No. 1). But Defendant has clarified that its name is Hudson Group (HG) Retail, LLC. *See* Def.'s Mem. in Support of its Mtn. to Dismiss, at 1 (Dckt. No. 36). The Court will refer to Defendant as either "Defendant" or "Hudson."

[2] The amended complaint repeats the same numbers when numbering the paragraphs in each count. Etheridge establishes the parties, jurisdiction, and venue in paragraphs 1–5. Count I incorporates those five paragraphs, and runs from paragraphs 6–30. Instead of starting with paragraph 31, Count II begins by incorporating paragraphs 1–5, and then starts with paragraph 6 again. The same is true for Counts III, IV, V, VI, and VIII. Count VII incorporates paragraphs 1 through 24 of Count VI, and then begins (and ends) with paragraph 25.

The attack left Etheridge bruised and battered. He suffered a cracked jaw, a sprained nose, and a separated rotator cuff, plus injuries to his arms, hip, and knee. *Id.* at ¶ 14 of Count I.

Etheridge needed medical help, but apparently the company forced him to drive his truck to the main office first. After the attack, "despite the fact that he was severely injured," Etheridge "was required" to drive his truck from O'Hare to the office in Elk Grove Village. *Id.* at ¶ 15 of Count II. Etheridge doesn't say *who* required him to drive (so the Court adopts his passive voice). When he reached the Elk Grove Village office, Etheridge told the manager on duty that he had to go to the hospital. *Id.* at ¶ 16 of Count II.

Eventually (Etheridge does not say when), he returned to work, but couldn't lift more than 25 pounds. *Id.* at ¶ 15 of Count I. He also had to attend regular therapy sessions for his injuries, which required him to miss several days a week from February 21 through April 16. *Id.* at ¶ 16 of Count I. On those days, he was in pain and physically unable to work. *Id.* at ¶ 17 of Count I.

All the while, Hudson knew about Etheridge's physical condition and treatment. Etheridge told a human resources officer named Dennis (whose last name is unknown), as well as the two managers mentioned before (again, Gerald and Roosevelt). *Id.* at ¶ 18 of Count I.

In April, when he returned to full-time work, Etheridge made deliveries to Terminals 3 and 5 of O'Hare International Airport. *Id.* at ¶¶ 21–22 of Count I. He walked and drove a forklift through the terminals, and was exposed to excessive amounts of paint fumes. *Id.* As a result, he developed respiratory issues. *Id.* at ¶ 21 of Count I.

Shortly after the exposure, he had to take time off work for "medical attention," presumably for lung issues. *Id.* at ¶ 24 of Count I. In early May, he informed Hudson's human resources department that he could not breathe as a result of the toxic fumes, and that he needed

to seek medical help.[3]  *Id.* at ¶ 25 of Count I.  And by September 2019, Etheridge alleges that he was permanently disabled.  *Id.* at ¶ 23 of Count I.

In May, before he developed a permanent disability, Etheridge applied for a day-shift driver position with Hudson.  *Id.* at ¶ 18 of Count II.  But at the end of the month, Hudson hired a non-disabled, female, younger employee (Caera Weeks) for the position.  *Id.* at ¶ 26 of Count I, ¶ 13 of Count IV.

Then, in May or June, Hudson hired another younger woman (Anjelica Clark) to be the top driver for the Elk Grove Village office.  *Id.* at ¶ 14 of Count IV.  But the complaint does not allege that Etheridge applied for that position.

Weeks and Clark were in their 20s at the time.  *Id.* at ¶ 11 of Count VI, ¶ 14 of Count VI. Neither had the required licenses or the same amount of driving experience as Etheridge.  *Id.* at ¶ 13 of Count IV, ¶ 18 of Count VI.

Around that time, Etheridge complained to his union that Gerald and Roosevelt (again, the managers) were discriminating against him on the basis of his race, sex, and age.  *Id.* at ¶ 18 of Count IV, ¶ 19 of Count V, ¶ 19 of Count VI.  He also complained directly to Gerald and Roosevelt about the discrimination.  *Id.*

---

[3]  Hudson attached all Etheridge's medical notes about his injuries from the fight and toxic fumes to its motion to dismiss.  *See* 2/27/19 Note (Dckt. No. 36-1); 3/8/19 Note (Dckt. No. 36-2); 3/15/19 Note (Dckt. No. 36-3); 6/8/19 Note (Dckt. No. 36-4).  The point was to prove Etheridge's injuries were less serious than he claims.  *See* Def.'s Mem. in Support of its Mtn. to Dismiss, at 3–4 (Dckt. No. 35).  "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider 'documents attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to his claim.'"  *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).  Etheridge does not reference these documents in his complaint. So, the Court will not consider them at this stage.  Even if the Court did consider the notes, however, its decision regarding Etheridge's disability claims would not change.  That is, the notes do nothing to affect the determination made below that Etheridge's injuries from his fight are not a disability under the ADA. They also do nothing to change the decision that Etheridge's allegations about his respiratory issues from the toxic fumes could be a disability.

On July 20, 2019, Gerald informed Etheridge that he had received at least three write-ups because he was off work too many days.[4]  *Id.* at ¶ 27 of Count I.  Etheridge complained that he did not deserve those write-ups because he was disabled and could not work every day.  *Id.* at ¶ 29 of Count II.  But Gerald didn't care.  He fired Etheridge that same day.  *Id.* at ¶ 28 of Count I.  Etheridge was 60 years old at the time.  *Id.* at ¶ 10 of Count VIII.

Etheridge believes that his termination was discriminatory.  On August 9, 2019, he filed a Charge of Discrimination with the EEOC, alleging disability, race, sex, age, and retaliation discrimination.  *See* Charge of Discrimination (Dckt. No. 31-1, at 2 of 4).  A little over a year later, the EEOC issued him a Right to Sue letter on September 9, 2020.  *See* Right to Sue Letter (Dckt. No. 31-1, at 4 of 4).

Etheridge filed this lawsuit on December 4, 2020, fewer than 90 days later.  *See* Cplt. (Dckt. No. 1); *see also* 42 U.S.C. § 2000e-5(f)(1).  After Hudson moved to dismiss, Etheridge filed an amended complaint.  *See* Def.'s Mtn. to Dismiss (Dckt. No. 14); Am. Cplt. (Dckt. No. 31).

In his amended complaint, Etheridge alleges eight counts of discrimination.  Counts I and II allege disability discrimination and retaliation under the ADA.  Counts III, IV, and V allege race discrimination, sex discrimination, and retaliation under Title VII.  And Counts VI, VII, and VIII allege age discrimination, willful age discrimination, and retaliation under the ADEA.

---

[4]  Etheridge alleges that he never received a write-up before his injuries.  *See* Am. Cplt., at ¶ 20 of Count I (Dckt. No. 31).  But Hudson attached all Etheridge's write-ups to its motion to dismiss, and one does predate his injuries.  *See* 12/9/18 Associate Counseling Warning (Dckt. No. 36-5); *see also* 4/22/19 Associate Counseling Warning (Dckt. No. 36-6); 6/27/19 Associate Counseling Warning (Dckt. No. 36-7); 7/23/2019 Associate Counseling Warning (Dckt. No. 36-8).  Etheridge's write-ups are referred to in his complaint, and they are central to his claims because if he received them before his injuries, that timing would potentially defeat his disability-discrimination claims.  So the Court could consider them, if needed.  *See Brownmark Films, LLC*, 682 F.3d at 690.  But only one of his four write-ups predated his injuries, and that single issue would not affect this Court's decision.  As a result, the Court disregards the four attached write-ups.

Hudson responded by filing its second motion to dismiss under Rule 12(b)(6) for failure to state a claim. *See* Def.'s Mtn. to Dismiss (Dckt. No. 34).

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

To survive, the complaint must give the defendant fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Facts count, but conclusions do not. As the text of Rule 8(a)(2) make clear, a plaintiff must "*show*[]" that the pleader is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678. A plaintiff who says that he has a claim, in conclusory fashion, doesn't say enough.

When reviewing a motion to dismiss under Rule 12(b)(6), a district court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

**Analysis**

Etheridge's complaint alleges several types of employment discrimination. He claims that Hudson discriminated against him because of his disability (injuries from the attack, and respiratory issues), race (white), sex (male), and age (over 60). He also claims that Hudson retaliated against him for complaining about the discrimination.

Bare, conclusory pleadings of employment discrimination will not survive a motion to dismiss. *See Kaminski v. Elite Staffing, Inc.*, 2022 WL 168260, at *1 (7th Cir. 2022) ("To be sure, although a plaintiff 'need not plead detailed factual allegations to survive a motion to dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate.'") (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)); *see also Gaines v. Dart*, 2021 WL 394814, at *2 (N.D. Ill. 2021) ("A plaintiff cannot survive a Rule 12(b)(6) motion to dismiss merely by stating that he is a member of a protected class and then reciting a boilerplate sentence about discrimination. More allegations are needed to comply with Rule 8."); *Haymon v. Metra*, 2020 WL 1548953, at *7 (N.D. Ill. 2020) ("[A]lthough the form portion of the Amended Complaint does contain an allegation that '[t]he defendant . . . failed to reasonable accommodate the plaintiff's religion,' such a bare and conclusory assertion is not enough to give the Defendants 'sufficient notice to enable [them] to begin to investigate and prepare a defense[.]'") (citations omitted). Even so, "[t]he pleading requirement for employment-discrimination claims is minimal. A plaintiff need only identify the type of discrimination, when it occurred, and by whom." *Clark v. Law Off. Of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017) (collecting cases).

That is, a plaintiff does not need to allege a *prima facie* case of employment discrimination to survive a motion to dismiss. *See Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021); *Swanson v. Citbank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002). A *prima facie* showing will, of course, be needed at summary judgment. At that point, Etheridge would need to come forward with evidence supporting each of the elements of the claim.

But at the pleading stage, the bar is lower. "It is enough for a plaintiff to assert that she was treated worse because of the protected characteristics." *Graham*, 8 F.4th at 627. For example, "[a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else." *Swanson*, 614 F.3d at 404.

Hudson doesn't believe that Etheridge cleared that low bar for any of his claims. So, it moves to dismiss his complaint on all eight counts: ADA disability discrimination (Count I), ADA retaliation (Count II), Title VII reverse race discrimination (Count III), Title VII sex discrimination (Count IV), Title VII retaliation (Count V), ADEA age discrimination (Count VI), ADEA willful age discrimination (Count VII), and ADEA retaliation (Count VIII). The Court analyzes each in turn.

## I. Disability Discrimination

Count I is a disability discrimination claim, meaning that Etheridge believes that he was terminated because of his disability. *See* Am. Cplt., at ¶ 28 of Count I (Dckt. No. 31). The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of

disability . . . ." *See* 42 U.S.C. § 12112(a). So, Etheridge needs to allege that he has a disability, and that he was fired because of it.

A disability is "a physical or mental impairment that substantially limits one or more major life activities of" the plaintiff, "a record of such an impairment," or "being regarded as having such an impairment." *See* 42 U.S.C. § 12102(1). Etheridge alleges two potential disabilities: (1) injuries from the attack by his co-worker, and (2) respiratory issues after exposure to toxic materials. *See* Am. Cplt., at ¶¶ 13–17, 21–25 of Count I (Dckt. No. 31). Hudson argues that neither condition counts as a disability.

The Court starts with the injuries from the attack. Etheridge alleges that he "suffered a cracked jaw, sprained nose, injury to his left and right arm, separated rotator cuff and an injured hip and knee." *Id.* at ¶ 14 of Count I. He returned to work with limits on lifting no more than 25 pounds, and had to attend regular therapy sessions through April 2019.[5] *Id.* at ¶¶ 15–17 of Count I, ¶ 17 of Count II. He also alleges that Hudson was aware of his injuries because he told the human resources department and his managers. *Id.* at ¶ 18 of Count I.

But none of those injuries are disabilities under the ADA. "Disability does not include temporary medical conditions." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg." *Vande Zande v. State of Wis. Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995). Etheridge alleges that his therapy for these injuries eventually ended in April. Etheridge's own allegations of the temporariness of his injuries pleads him out of ADA protection.

---

[5] At one point, Etheridge alleges that he was in therapy until April 21, 2021. *See* Am. Cplt., at ¶ 17 of Count I (Dckt. No. 31). But the Court assumes that is a mistake. Elsewhere, he says April 2019. *Id.* at ¶ 16 of Count I, ¶ 17 of Count II. If not, he can move to amend.

Etheridge attempts to salvage his claim by arguing that he pleaded "that he was regarded and perceived as being disabled by Defendant after the serious injuries received as a result of being beaten by a co-worker on the job." *See* Pl.'s Mem. in Opposition to Def.'s Mtn. to Dismiss, at 3 (Dckt. No. 44). If an employee is "regarded as having such an impairment," it means that "he or she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *See* 42 U.S.C. § 12102(3)(A). However, this prong "shall not apply to impairments that are transitory and minor," such as those "with an actual or expected duration of 6 months or less." *See* 42 U.S.C. § 12102(3)(A).

Etheridge alleges that the injuries required physical therapy through April 16, 2019. *See* Am. Cplt., at ¶ 16 of Count I (Dckt. No. 31). He incurred those injuries on February 21, 2019. *Id.* That's two months. So, the complaint alleges that the injuries were transitory, and thus cannot give rise to a claim.

Next, the Court considers the respiratory issues. Etheridge alleges that he developed respiratory issues after an exposure to excessive amounts of paint fumes at O'Hare from April 2019 through June 2019. *Id.* at ¶¶ 21–22 of Count I. He told human resources that he needed medical attention in May 2019, and took time off from work, too. *Id.* at ¶¶ 24–25 of Count I. And then, in September 2019 (two months after his termination), Etheridge became permanently disabled. *Id.* at ¶ 23 of Count I.

Breathing is a "major life activity" under the ADA. *See* 42 U.S.C. § 12102(2)(A). And respiratory functions are "major bodily functions," too. *See* 42 U.S.C. § 12102(2)(B). So, Etheridge's respiratory issue, while vaguely described in his complaint, is plausibly a protected disability.

Hudson points out that Etheridge did not become permanently disabled until *after* his termination. *See* Def.'s Mem. in Support of its Mtn. to Dismiss, at 8 (Dckt. No. 35). That alone is not enough to end Etheridge's claim. "In deciding whether a person is disabled, [the Seventh Circuit] consider[s] 'the nature and severity of the impairment, the duration and expected duration of the impairment, and the permanent or long term impact or the expected permanent or long term impact of or resulting from the impairment.'" *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(2)(i)–(iii)). Etheridge alleges that he experienced difficulty breathing and disruption to his respiratory system for months before receiving a permanent disability diagnosis. That allegation falls within the parameters of the statute, which covers an injury that is permanent or that will have a long-term impact.

Etheridge also adequately alleges that this disability was the reason for his termination. He states that he told human resources that he needed medical care, and that he took off time from work to seek that care. *See* Am. Cplt., at ¶¶ 24–25 of Count I (Dckt. No. 31). Then, after receiving "at least three (3) write-ups when he was under a doctor's care because he was off work too many days," he alleges that he was fired for missing "too many days." *Id.* at ¶ 27 of Count I.

Etheridge alleges that he has a disability, that Hudson knew about the disability, and that Hudson fired him because of his missing time for his disability. Taken together, the allegations of the complaint state a plausible claim of disability discrimination under the ADA.

The motion to dismiss Count I is granted to the extent that Etheridge relies on injuries from the attack. The motion to dismiss Count I is denied to the extent that it relies on respiratory issues.

## II.     ADA Retaliation

Count II is a retaliation claim, meaning that Etheridge believes that the company terminated him because he engaged in a protected activity.  *See* Am. Cplt., at ¶¶ 29–30 of Count II (Dckt. No. 31).  The ADA prohibits employers from "discriminat[ing] against any individual because such individual has opposed any act or practice made unlawful."  *See* 42 U.S.C. § 12203(a).  Etheridge must allege that he conducted a protected activity (like complaining about disability discrimination) and that he was fired because of that protected activity.

Etheridge alleges that, after his manager informed him that he missed "too many days," he "complained . . . that he was disabled and could not be at work every day and, therefore, should not receive write-ups."  *See* Am. Cplt., at ¶¶ 28–29 of Count II (Dckt. No. 31).  Then, Etheridge's manager terminated him.  *Id.* at ¶ 30 of Count II.  Etheridge alleges that termination was in retaliation for his complaints, made on the same day.  *Id.*

Internal complaints about discrimination are protected activities.  *See Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009).  But, here, Etheridge complained *after* his manager began disciplining him for his missing work.  *See* Am. Cplt., at ¶ 29 of Count II ("Plaintiff complained to Manager Gerald that he was disabled and could not be at work every day and, therefore, should not receive write-ups.").  That is, the manager had already begun discussing Etheridge's missed days with him, and in response, Etheridge mentioned his disability.

The protected activity must come before the retaliation.  Otherwise, the protected activity can't be the reason for the retaliation.  Protected activity first; retaliation second.  Here, Etheridge's retaliation claim fails because "the statutorily protected activity in which [he] engaged . . . came after [his manager] began disciplining" him for missing work.  *See Arroyo v.*

*Volvo Grp. N. Am., LLC*, 805 F.3d 278, 287 (7th Cir. 2015). So, by alleging that the company disciplined him before he engaged in the protected activity, Etheridge pleaded himself out of court.

Etheridge failed to plead a plausible claim of ADA retaliation, so the Court grants Hudson's motion to dismiss Count II.

## III. Reverse Race Discrimination

Count III is a reverse race discrimination claim, meaning that the company treated him adversely because he is white. *See* Am. Cplt., at ¶ 21 of Count III (Dckt. No. 31). Title VII makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." *See* 42 U.S.C. § 2000e-2(a)(2). Again, Etheridge does not need to plead a *prima facie* case, supported with evidence and granular details. He simply needs to include enough facts to tell a plausible story.

Etheridge alleges enough to survive a motion to dismiss. Etheridge alleges that he is white, and that all other drivers are black. *See* Am. Cplt., at ¶ 12 of Count III (Dckt. No. 31). He applied for a day-shift position, but the company passed him over, and gave the job to a less experienced black applicant instead. *Id.* at ¶¶ 16–17 of Count III. He complained about certain black drivers taking drugs in their work vehicles, and then a black driver beat him up. *Id.* at ¶¶ 14–15 of Count III. Months later, Etheridge's manager, who is black, fired Etheridge, even though his performance was as good or better than the other employees. *Id.* at ¶¶ 21–22 of Count III.

Overall, the complaint is sometimes thin and conclusory. An allegation that a white person was fired by a black person (or vice versa) isn't enough to state a claim of racial

discrimination. Identifying the racial background of the participants, without more, is not enough to give rise to a plausible inference that race was the reason for the adverse employment action.

Even so, this Court must read the complaint as a whole. There are some dots, and it is not clear that they are connected. But the allegations do outline a plausible story of a white employee who was discriminated against by an otherwise entirely black workplace. The allegations might suggest "evidence that there is something fishy about the facts at hand." *Phelan v. City of Chicago*, 347 F3d 679, 684 (7th Cir. 2003) (cleaned up). That claim might not survive long term, but it survives for now.

Because Etheridge alleges a plausible claim of reverse race discrimination, the Court denies Hudson's motion to dismiss Count III.

## IV.    Sex Discrimination

Count IV is a gender discrimination claim (which the Court understands to mean sex discrimination), meaning that Etheridge alleges that he was terminated because he is a man. *See* Am. Cplt., at ¶ 21 of Count IV (Dckt. No. 31). He also alleges that the company passed him over for at least one position because of his sex. *Id.* at ¶ 13 of Count IV. In addition to race, Title VII makes it unlawful to discriminate against employees because of their sex. *See* 42 U.S.C. § 2000e-2(a)(2).

Etheridge has failed to allege facts that state a plausible claim of sex discrimination about his termination. He has significantly less footing to stand on than his reverse race discrimination claim. Etheridge does not allege that he is the only man driving for the company – in fact, he pleads the opposite. *See* Am. Cplt., at ¶ 14 of Count III (Dckt. No. 31) (naming Derrick as

another driver).  He does not point to any facts suggesting that men at Hudson faced discrimination more generally.  He does not allege that a woman fired him, either.

The allegation about his termination is murky and conclusory.  Etheridge alleges that "[n]o female drivers were not terminated for applying but not being promoted to the day shift." *Id.* at ¶ 20 of Count IV.  The Court assumes that he means that he is the only male driver who applied for the new position, didn't get it, and was fired.  A month after missing out on the position, his manager (again, also a man) fired him.  Taking these allegations together, Etheridge concludes that he was terminated "because of his gender."  *Id.* at ¶ 21 of Count IV.

The allegation about his termination does not include enough facts to give rise to a plausible claim.  Etheridge basically alleges that he was fired, and he believes that his sex had something to do with it.  But there is nothing to support that assertion, except the fact that female employees weren't fired.  That's not much to go on.  *See Doe v. Columbia Coll. Chicago*, 933 F.3d 849, 855 (7th Cir. 2019) ("A plaintiff cannot rely on these generalized allegations alone, however, but must combine them with facts particular to his case to survive a motion to dismiss."); *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019) ("But to state a claim, he must allege facts raising the inference that Purdue acted at least partly on the basis of sex in his particular case.").

Unlike his race discrimination claim, Etheridge fails to allege "something more" that could support a plausible claim about his termination.  All he alleges is that he is a man and he was fired.  Meanwhile, two women were hired for two positions that Etheridge never held – including a position he does not allege that he applied for.  That's not enough for a claim.  *See Kaminski*, 2022 WL 168260, at *2 ("At a high level of generality, all agree Kaminski alleges she lost her job because of her age, race, and national origin.  But Rule 8 requires more.").  "There

15

must be some *facts* that make the wrongful discharge contention plausible." *Id.* (emphasis in original). But here, there are none.

"Although a complaint need not give 'detailed factual allegations,' it must allege enough facts 'to raise a right to relief above the speculative level.'" *Gaines*, 2021 WL 394814, at *2 (quoting *Twombly*, 550 U.S. at 555). All in all, Etheridge's termination claim rests on nothing more than conclusory allegations of sex discrimination. *See Swanson*, 614 F.3d at 405. He offers speculation, and nothing more.

In contrast, Etheridge does allege enough to state a claim about getting passed over for the driver position. He alleges that he applied for a driver position on the day shift, and that the company hired a "less experienced female applicant." *See* Am. Cplt., at ¶ 13 of Count III (Dckt. No. 31). The company hired her even though "she did not have a required CDL license, a DOT card or the amount of driving experience of Plaintiff." *Id.*

Etheridge alleges that he applied for a position, and the company hired a less-qualified woman instead. That's thin, but under controlling precedent, it is enough to state a claim. *See Swanson*, 614 F.3d at 404–05 ("A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case.").

Etheridge also alleges that the company hired "another female applicant" to be the top driver at the Elk Grove Village facility, even though she had less experience and lesser credentials. *See* Am. Cplt., at ¶ 14 of Count III (Dckt. No. 31). But Etheridge does not allege that he applied for that job. So, as things stand, the complaint does not allege that the company

16

discriminated against him in that particular incident. Etheridge can file a motion for leave to amend if he intended to allege that he applied for that position, but the company passed him over on account of his sex.

The Court grants Hudson's motion to dismiss the sex discrimination claim to the extent that Etheridge's claim is based on his termination. But the Court denies the motion to dismiss to the extent that Etheridge's sex discrimination claim rests on Hudson's decision to hire a woman for the day-shift position instead of him.

## V.    Title VII Retaliation

Count V is a retaliation claim. Etheridge alleges that the company retaliated against him for engaging in protected activity (namely, he made complaints about race and sex discrimination). *See* Am. Cplt., at ¶¶ 20–21 of Count V (Dckt. No. 31). Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice." *See* 42 U.S.C. § 2000e-3(a). Like his ADA retaliation claim (above), Etheredge needs to allege that he engaged in a protected activity and was fired because of it.

The retaliation claim under Title VII does not suffer from the same timeline issue that plagued the retaliation claim under the ADA. In May or June 2019, Etheridge complained to his union and – more importantly – to his managers that he was being discriminated against because of his race and sex. *See* Am. Cplt., at ¶ 19 of Count V (Dckt. No. 31). Then, on July 20, his managers fired him. *Id.* at ¶ 20 of Count V. So, unlike his ADA retaliation claim, Etheridge's employers did not begin taking an adverse action against him until *after* he made his complaints.

But there is another problem. Courts in this district have addressed motions to dismiss in the First Amendment context, where timing is the only link between the protected action and the

17

termination: "Suspicious timing between the protected activity and the adverse action may, on its own, be enough to raise an inference of causation between the protected speech and the alleged retaliation: but, in order to rely only on suspicious timing to raise this inference, a plaintiff must demonstrate that the adverse employment action 'follows close on the heels of protected expression' and that the person who imposed the adverse action knew of that protected expression." *Wheeler v. Piazza*, 2018 WL 835353, at *4 (N.D. Ill. 2018) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012)).

Generally, in either First Amendment or employment retaliation cases, "the Seventh Circuit allows 'no more than a few days to elapse' between the protected activity and the adverse employment action to raise an inference of causation." *Id.* (quoting *Kidwell*, 679 F.3d at 966–67) (collecting cases about First Amendment and employment retaliation). The greater the passage of time, the lesser the inference that the adverse action had something to do with the protected activity.

Here, too much time passed to support a plausible inference that the company fired him because of his complaints. Etheridge alleges that he complained about discrimination in May or June, and the company fired him on July 20. Weeks if not months passed by. That stretch of time is too big of a stretch to support an inference of a connection. And there are no other supporting facts to buttress the connection between the speech and the adverse action.

Because Etheridge failed to plead a plausible claim of retaliation under Title VII, the Court grants Hudson's motion to dismiss Count V.

## VI.     Age Discrimination

Count VI is an age discrimination claim, meaning that Etheridge believes that he was terminated because of his age, and passed over for another position. *See* Am. Cplt., at ¶¶ 11, 20–

18

21 of Count VI (Dckt. No. 31). The ADEA makes it unlawful for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *See* 29 U.S.C. § 623(a)(1). Like the other discrimination claims, Etheridge needs to allege enough facts to tell a plausible story that his employer terminated him because of his age.

Etheridge's age discrimination claim resembles his sex discrimination claim. The entire argument hinges primarily on his age (60s) and the age of the women (20s) who were hired for positions that Etheridge did not have (and again, he might not have applied for one of them). *See* Am. Cplt., at ¶¶ 10, 18 of Count VI (Dckt. No. 31).

There is one difference between his age and sex discrimination claims. Etheridge offers one vague allegation – devoid of any specifics about timing, content, or context – about unidentified statements by an unidentified person. "Plaintiff received discriminatory and harassing comments regarding his age from Defendant prior to his termination." *Id.* at ¶ 21 of Count VI. Nevertheless, besides this one sentence, he offers no reason to believe his *termination* (as opposed to his denial of a promotion, for example) had anything to do with age. He provides no information on the age of his manager, or his replacement (or even if Hudson hired a replacement).

Etheridge's one additional statement that his employer made discriminatory comments about his age is not enough to move the needle to plausibility. A vague, conclusory statement fails to satisfy Rule 8's requirement to give a defendant adequate notice of the allegations against it. "Our notice-pleading system requires complaints to contain a 'short and plain statement of the

19

claim' sufficient to notify defendants of the allegations against them and enable them to file an answer." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (quoting Fed. R. Civ. P. 8(a)).[6]

And without that additional allegation, Etheridge's age discrimination claim is indistinguishable from his sex discrimination claim. As a result, it is no more than a conclusory allegation, lacking any factual foothold to support a plausible claim.

That said, Etheridge does allege that he applied for a day-shift position, and was passed over for a less-experienced, younger driver. *See* Am. Cplt., at ¶ 11 at Count VI (Dckt. No. 31). This slender reed is enough to state a claim. *See Swanson*, 614 F.3d at 404–05. It may not pass muster down the road, but for now, it slumps over the low hurdle of Rule 8.

The Court grants Hudson's motion to dismiss to the extent that it is about Etheridge's termination. But the Court denies the motion to dismiss to the extent that it rests on Hudson's hiring of a younger person for the day-shift position.

## VII.   Willful Age Discrimination

Count VII is a willful age discrimination claim, meaning that Etheridge believes that Hudson acted intentionally or recklessly in terminating him and passing him over because of his age. *See* Am. Cplt., at ¶ 25 of Count VII (Dckt. No. 31). The ADEA allows for liquidated damages, meaning "unpaid minimum wages or unpaid overtime compensation," but "only in cases of willful violations." *See* 29 U.S.C. § 626(b). Etheridge incorporates his age discrimination facts into this claim, and then tacks on one conclusory statement: "Defendant's discriminatory conduct, as aforesaid, was intentional and/or in reckless disregard for Plaintiff's

---

[6] The Court does not read the complaint to allege that the comment about his age, in and of itself, gives rise to a claim, such as a hostile work environment claim. *See Boss v. Castro*, 816 F.3d 910, 920–21 (7th Cir. 2016) (summarizing the law about racial slurs); *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 466 (7th Cir. 2002). Instead, the Court reads the complaint to allege that someone made an age-based comment to Etheridge at some point, and therefore it is plausible that age was a reason for his termination.

20

rights under the law and these acts constitute willful indifference to said rights." *See* Am. Cplt., at ¶ 25 of Count VII.

To start, because Ethridge's age discrimination claim failed with respect to the termination claim, he obviously cannot succeed on a *willful* age discrimination claim.

The result is different for the age discrimination claim about getting passed over for another job. The complaint basically alleges the same thing as the ordinary ADEA claim, and then alleges in conclusory fashion that the company acted in an intentional or reckless manner.

True, that allegation is conclusory. A complaint cannot merely recite all of the elements of a claim, and then stop. "[A]s the Supreme Court warned in *Iqbal* and as [the Seventh Circuit] acknowledged later in *Brooks v. Ross*, 578 F.3d 574 (7th Cir. 2009), 'abstract recitations of the elements of a cause of action or conclusory legal statements' do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law." *Swanson*, 614 F.3d at 405 (quoting *Brooks*, 578 F.3d at 581).

But by the same token, Etheridge does not have an obligation to marshal his evidence about intent and recklessness at the motion-to-dismiss stage, either. If the claim were entirely conclusory, it would not survive. But here, the fact that Etheridge alleges an element in conclusory fashion is not fatal, because Etheridge doesn't have to plead the elements now anyway.

The Court grants Hudson's motion to dismiss the willful age discrimination claim about his termination, but denies the motion to dismiss that claim about getting passed over for another position.

## VIII.   ADEA Retaliation

Count VIII is a retaliation claim, meaning that Etheridge believes that he was terminated because he conducted a protected activity (namely, he made complaints about being discriminated against because of his age).  *See* Am. Cplt., at ¶¶ 15–16 of Count VIII (Dckt. No. 31).  The ADEA makes it "unlawful for an employer to discriminate against any of his employees . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section . . . ."  *See* 29 U.S.C. § 623(d).

Etheridge's ADEA retaliation claim is deficient in the same way as his Title VII retaliation claim.  He alleges that he complained about age discrimination in May or June, and then was fired "approximately one month after" in July.  *See* Am. Cplt., ¶¶ 15–16 of Count VIII (Dckt. No. 31).  He offers nothing to bridge that time gap.  Without more, his claim must fail for the same reasons as the Title VII claim.  *See Wheeler*, 2018 WL 835353, at *4 (quoting *Kidwell*, 679 F.3d at 966–67).

Because Etheridge does not provide allegations sufficient for a plausible claim of retaliation under the ADEA, the Court grants Hudson's motion to dismiss Count VIII.

### Conclusion

For the foregoing reasons, Defendant's motion to dismiss is granted as to Counts II, V, and VIII.  Defendant's motion to dismiss is granted in part and denied in part as to Counts I, III, IV, VI, and VII.


Date:   February 8, 2022        _____

                                Steven C. Seeger
                                United States District Judge